UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**LAMONICA BRATTON, ET AL.,**

Plaintiffs,

v. **No. 4:26-cv-00675-P**

**TARRANT COUNTY, TEXAS, ET AL.,**

Defendants.

## OPINION & ORDER

Before the Court is Defendant Tarrant County, Texas's Motion to Dismiss ("Motion"). ECF No. 7. Defendant moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging Plaintiffs have failed to state a plausible claim for relief. Having considered the Parties' arguments, the record, and applicable law, the Court will **GRANT** the Motion.

## BACKGROUND

This lawsuit arises out of Chasity Bonner's death at Tarrant County Jail ("TCJ"). In May 2024, Ms. Bonner was booked as an inmate at TCJ. Compl. ¶ 22. Plaintiffs allege that while Ms. Bonner was healthy prior to arriving at TCJ, she became very ill after she arrived there. Compl. ¶ 22. Despite clearly being in medical distress, jail staff did not examine her for over two weeks. Compl. ¶ 23. On the morning of her death, jail staff took Ms. Bonner to the medical floor in a wheelchair after seeing she was slumped over and unable to walk. Compl. ¶ 23. On the medical floor, it was determined that Ms. Bonner had severely low blood pressure. Compl. ¶¶ 23–25. Instead of calling an ambulance, jail staff returned Ms. Bonner to her to cell. Compl. ¶ 23. About an hour later, Ms. Bonner was found unresponsive on the floor of her cell. Compl. ¶ 25. Shortly thereafter, jail staff administered her Narcan and dispatched her to a hospital. Compl. ¶ 23. By the time she arrived at the hospital, Ms. Bonner was declared dead. Compl. ¶ 26.

Ms. Bonner's estate brought suit against Tarrant County, Texas ("Tarrant County"), alleging that Tarrant County refused to provide her medical care. Compl. ¶ 6. Ms. Bonner's death, Plaintiffs allege, is part of a much larger problem at TJC. *See* Compl. ¶ 41 (identifying "suspicious" inmate deaths at TCJ). Pursuant to 42 U.S.C. § 1983, Plaintiffs assert three types of claims against Tarrant County under the Eighth and/or Fourteenth Amendments for Deliberate Indifference, Failure to Adequately Train or Supervise, and Unsafe Conditions of Confinement.

## LEGAL STANDARD

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege facts showing that she has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

To hold a municipality liable under § 1983, a plaintiff must show that "the municipality *itself*" caused the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)) (emphasis in

original). Such constitutional violations may occur due to the municipality's official, promulgated policies; its pervasive customs or practices; its failure to train, supervise, or discipline employees; or decisions or acts by final municipal policymakers. *Monell*, 436 U.S. at 690–95. To state a *Monell* claim, a plaintiff must plead: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Thompson ex rel. Neveah T. v. Martinez*, 789 F. Supp. 3d 491, 529 (W.D. Tex. 2025) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2020)). If an official policy is not explicit, "widespread practice of city officials or employees" can suffice if the practice is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (citation omitted). If no constitutional violation occurred, the plaintiff's *Monell* claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

## ANALYSIS

### A. Plaintiffs have failed to state a claim for inadequate medical care.

Plaintiffs allege that Tarrant County's policymakers "failed to enact, implement, and enforce policies, practices, and procedures for the TCJ and the [Tarrant County Sheriff's Office] that respected Chasity's constitutional rights." Compl. ¶ 11. Instead, "policies or customs were created, tolerated, and allowed to persist that resulted in the death of over sixty inmates." Compl. ¶ 11. Essentially, Plaintiffs allege that Tarrant County did not have a specific policy for ensuring inmates receive adequate medical care, but enacted a *de facto* policy of deliberate indifference to its inmates' medical needs. Compl. ¶¶ 64–66.

To plead a *de facto* policy, Plaintiff must show "a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials[.]'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996)). This requires a showing of "similarity and specificity" in the pattern of conduct. *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 810 (5th Cir. 2017) (citation omitted).

Pointing generally to prior "bad acts" is insufficient, but instead Plaintiff must show a pattern unique to the "specific violation" in question." *Id.* Proving such a pattern "is a heavy burden, one that has rarely been met in our caselaw." *Shepherd*, 591 F.3d at 452.

Plaintiffs identify twenty-five other inmate deaths in an attempt to supply evidence of Tarrant County's pattern of deliberate indifference to inmate's medical needs. While not laid out in full here, those examples include: inmates dying shortly after being booked to TCJ, inmates with a history of mental illness dying at TCJ, inmates dying after being assaulted by TCJ staff, and inmates committing suicide. Compl. ¶ 41. What is missing from the examples Plaintiffs supply is any hint of "similarity or specificity" to the violation in question. *Hicks-Fields*, 860 F.3d at 810.

Here, Plaintiffs allege that Tarrant County had no policy for ensuring inmates receive adequate treatment for their medical needs after suffering a medical event like Ms. Bonner. Compl. ¶ 65. Most of the examples Plaintiffs provide involve inmates with pre-existing medical conditions or inmates who died after suffering an assault at the jail, and the other examples totally lack any context of the inmate's death. At most, only one example involves an inmate suffering a medical event known to TCJ. *See* Compl. ¶ 41(xi) (inmate with history of mental illness died after complaining his untreated anxiety kept him awake for prior 48 hours). The only common thread among the examples Plaintiffs provide is that the inmates died somewhat soon after being booked at TCJ. Plaintiffs' examples do not show a pattern unique to the "specific violation" in question–inmate death after failure to medical receive aid following a documented medical event. Pointing generally to prior bad acts that carry some essence of similarly is not enough for Plaintiffs to meet their burden. *Hicks-Fields*, 860 F.3d at 810. Even assuming some of the examples identify a medical event sufficiently similar to Ms. Bratton, such incidents do not show a "pervasive" pattern to rise to the level of a *de facto* policy.

Plaintiffs have not met their "heavy burden" of proving a *de facto* policy. *Shepherd*, 591 F.3d at 452. Accordingly, Plaintiffs have failed to

state a claim for deliberate indifference against Tarrant County pursuant to *Monell*.

**B. Plaintiffs fail to state a claim for failure to train.**

"A failure-to-train action is a type of *Monell* claim." *Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 477, 482 (5th Cir. 2021). To state a claim under a failure-to-train theory, Plaintiffs must demonstrate that: "(1) the defendant failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Stapleton v. Lozano*, 125 F.4th 743, 754 (5th Cir. 2025). To establish deliberate indifference, Plaintiffs must show "[a] pattern of similar constitutional violations by untrained employees." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).

For similar reasons as above, Plaintiffs do not plead a "pattern of similar constitutional violations by untrained employees." *Stapleton*, 125 F.4th at 754. While Plaintiffs allege that TCJ staff took a "'wait and see' approach" instead of calling an EMS immediately, the list of the examples they provide do not identify a pattern of other incidents involving Tarrant County's failure to seek emergency medical care. Compl. ¶ 25. Again, with the exception of perhaps one incident, the incidents Plaintiffs cite do not involve untrained medical personnel's failure to provide adequate medical care following a serious medical incident. The incidents Plaintiffs allege "are not similar to the violation at issue here," and therefore they could not have put Tarrant County "on notice that specific training was necessary to avoid this constitutional violation." *Connick*, 563 U.S. at 63. Because Plaintiffs have failed to establish a pattern of similar violations by untrained employees, they have not stated a claim for failure to train.

**C. Plaintiffs fail to state a claim for conditions of confinement.**

To state a conditions of confinement claim, Plaintiffs must show: "(1) 'a rule or restriction or ... the existence of an identifiable intended condition or practice ... [or] that the jail official's acts or omissions were

sufficiently extended or pervasive'; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [the inmate's] constitutional rights." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (quoting *Duvall v. Dalls Cty.*, 631 F.3d 203, 207 (5th Cir. 2011)). This similarly requires a showing of "a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Cadena*, 946 F.3d at 727 (citing *Shephard*, 591 F.3d at 452).

Plaintiffs have not alleged a conditions of confinement case. A conditions case is an attack on the general "conditions, practices, rules, or restrictions of pretrial confinement." *Johnson v. Tarrant Cnty., Texas*, No. 4:24-CV-686-O, 2025 WL 438366, at *3 (N.D. Tex. Feb. 7, 2025), *aff'd*, 2026 WL 2455772 (5th Cir. Aug. 21, 2026). Conditions cases involve "durable restraints or impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat." *Garza v. City of Donna*, 922 F.3d 626, 633 (5th Cir. 2019). In conditions cases, no individual's error causes the harm alleged, but "the conditions themselves constitute the harm . . . regardless of any individual's act or omission." *Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *8 (5th Cir. June 26, 2024) (internal citation omitted).

Here, Plaintiffs specifically allege that TCJ's "willful neglect" caused Ms. Bonner's death. Compl. ¶ 10. Plaintiffs do not identify a condition of the jail, or the medical unit in particular, that caused Ms. Bonner's death. This case is clearly distinct from those involving overcrowding or another imposition on inmates' day-to-day lives caused by the state of the jail. *See Johnson*, 2025 WL 438366, at *5 (case involving inmate death after assault by jailers was "clearly" not a conditions case). Because Plaintiffs have not identified a condition causing Ms. Bonner's death, they have failed to state a conditions of confinement claim.

**D. Plaintiffs fail to state an episodic act claim.**

Instead of a conditions of confinement case, this case is properly construed as an episodic act case, which Plaintiffs plead in the

alternative. To establish municipal liability in an episodic act case, Plaintiffs must show: "(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 632. Again, this requires showing "a pattern of similar constitutional violations by untrained employees." *Pena v. Starr Cnty., Texas*, 191 F.4th 239, 255 (5th Cir. 2026) (citation omitted).

And again, the twenty-five suspicious deaths that Plaintiffs include in the Complaint does not establish a pattern or practice relevant to this lawsuit. Not only are the majority of those examples factually distinct from the allegations in the Complaint, but the few bearing any relation do not establish a "pattern." Only five of those examples involved any sort of medical event. And only one of those five allege that Tarrant County was put on notice that the inmate might need medical attention. Compl. ¶ 41(xi). The rest include no information on medical events known to TCJ. Here, Plaintiffs specifically allege that Ms. Bonner's death was caused by Tarrant County's inaction after it was on notice that Ms. Bonner needed medical attention. Compl. ¶ 10. Apart from one, the examples provided by Plaintiffs lack any indication that the deaths occurred due to TCJ's inaction after being aware of a medical event. Plaintiffs allegations are insufficient to establish a "pattern" of deliberate indifference.

Accordingly, Plaintiffs have failed to state an episodic acts or omissions claim.

**E. Plaintiffs are denied leave to amend.**

Plaintiffs state that they have sufficiently pled *Monell* claims against Tarrant County. Nonetheless, they request leave to amend if the Court finds the Complaint deficient. While to leave to amend should be granted "when justice so requires," FED. R. CIV. P. 15(a)(2), Plaintiffs have not identified how leave to amend would cure the deficiencies in Plaintiffs' Complaint. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017). Nor do Plaintiffs identify the specific grounds for which leave is sought, FED.

R. CIV. P. 7(B)(1)(B), or attach the proposed amended pleading, N.D. Tex. L.R. 15.1. Because Plaintiffs allege they have adequately pled their claims, and have not identified any facts that would cure the deficiency in their complaint, leave to amend to would be futile. Accordingly, Plaintiffs' request is **DENIED**.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED**. Plaintiffs' claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **4th day of November 2026.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE